IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| THE FOREST GROUP, INC., | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-05-4127 |
| | § | |
| BON TOOL COMPANY, *et al.*, | § | |
|     Defendant. | § | |

## MEMORANDUM ON CLAIM CONSTRUCTION

This patent case is before the Court for construction of the disputed claim terms in United States Patent No. 5,645,515 ("the '515 Patent"). The Court conducted a hearing pursuant to *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 390 (1996) ("*Markman* hearing") on February 9, 2007.[1] Based on the evidence before the Court, the arguments presented by counsel at the *Markman* hearing, and the governing legal authorities, the Court issues this Memorandum construing the disputed claim terms.

### I.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff The Forest Group, Inc. ("Forest") owns all rights in the '515 Patent, originally issued to William D. Armstrong.[2] The '515 Patent covers a stilt used

---

[1] Defendants Cibon Industrial and Shanghai Honest Tool Co., Ltd. have not appeared in the case and did not participate in the *Markman* hearing.

[2] Defendant Bon Tool Company questions Plaintiff's ownership of the '515 Patent. Plaintiff has represented to the Court and to Defendant that it has a valid assignment of all rights to the '515 Patent and has agreed to provide a copy of that assignment to Defendant.

primarily in the construction industry to enable workmen to install suspended ceiling structures or to access the various systems contained in such ceiling structures. The stilts enable the workmen to walk around more freely while they are raised to an elevated height.

The stilt covered by the '515 Patent contains a floor platform, a shoe platform, vertical supports that can be extended or shortened to move the shoe platform to different elevated heights. Attached to the side of the rear vertical support is a leg support that can be adjusted vertically and horizontally to fit the user's legs. The platforms are pivotally connected to the vertical supports, and supports containing a spring are located between and connected to the two vertical supports. The combination of the two vertical supports, the floor platform, and the shoe platform create a parallelogram configuration. The lower end of the leg support fits into a "capturing bracket" riveted to the rear vertical support. The leg support is attached to the shoe platform by a clamp, referred to in the '515 Patent as a "yoke."

The stilt covered by the '515 Patent was designed to address two major problems in the stilts covered by the prior art. Previously, stilts had only one fastening means (such as a bolt) and, as a result, often failed without warning, causing the user to fall. Rather than bolting or otherwise fastening the leg support to the rear vertical support in the manner previously used, the '515 Patent calls for one fastener to hold the

leg support in a second fastening means, referred to as the "capturing bracket." Also, in prior stilts the clamp or yoke would often either crimp the leg support pole or would break. The '515 Patent addresses this concern by requiring that the yoke be "resiliently lined."

Plaintiff manufactures and sells stilts covered by the '515 Patent. Plaintiff alleges that Defendant Bon Tool Company ("Bon Tool") sell stilts which infringe that Patent.

Because the parties dispute the proper construction of certain terms in Claims 1 and 2 of the '515 Patent, the Court is required to construe those terms. The parties filed their Joint Claim Construction and Prehearing Statement [Doc. # 68], briefs in support of their respective claim construction proposals [Docs. # 76, # 78, and # 79], and a Joint Claim Construction Chart [Doc. # 81]. The Court conducted a *Markman* hearing, during which both parties presented testimony and oral argument regarding their respective proposed claim constructions.

## II.   GENERAL LEGAL STANDARDS FOR CLAIM CONSTRUCTION

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (*en banc*) (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Systems, Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)),

*cert. denied*, __ U.S. __, 126 S. Ct. 1332 (2006). The patent claims in issue must be construed as a matter of law to determine their scope and meaning. *See, e.g., Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 390 (1996), *aff'g*, 52 F.3d 967, 976 (Fed. Cir.) (*en banc*).

The words of a claim "are generally given their ordinary and customary meaning." *Phillips*, 415 F.3d at 1312 (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)). The "ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, *i.e.*, as of the effective filing date of the patent application." *Id.* at 1313. This "person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Id.*

For certain claim terms, "the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Phillips*, 415 F.3d at 1314 (citing *Brown v. 3M*, 265 F.3d 1349, 1352 (Fed. Cir. 2001)). For other claim terms, however, the meaning of the claim language may be less apparent. To construe those terms, the Court considers "those sources available to the public that show what a person of skill

in the art would have understood disputed claim language to mean . . . . [including] the words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art." *Id.* (citing *Innova*, 381 F.3d at 1116). The Court may also consider dictionaries, both technical and general purpose. *See id.*

The claims "provide substantial guidance as to the meaning of particular claim terms." *Id.* The Court may consider the context in which the terms are used and the differences among the claims. *See id.* "Because claim terms are normally used consistently throughout the patent, the usage of a term in one claim can often illuminate the meaning of the same term in other claims." *Id.* Because the claims "are part of a fully integrated written instrument," the Court may also consider the specification and the patent's prosecution history. *Id.* at 1315, 1317. Indeed, the specification "is the single best guide to the meaning of a disputed term." *Yoon Ja Kim v. Conagra Foods, Inc.*, 465 F.3d 1312, 1318 (Fed. Cir. 2006) (quoting *Phillips*, 415 F.3d at 1315).

The Court may also consider "extrinsic evidence, which 'consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises.'" *Id.* at 1317 (quoting *Markman*, 52 F.3d at 980). Yet although extrinsic evidence may assist the Court in claim construction, it is "less significant than the intrinsic record in determining the legally operative meaning of

claim language." *Id.* (internal quotations and citation omitted). As a result, extrinsic evidence should be "considered in the context of the intrinsic evidence." *Id.* at 1319.

The Federal Circuit has emphasized that "there is no magic formula or catechism for conducting claim construction. Nor is the court barred from considering any particular sources or required to analyze sources in any specific sequence, as long as those sources are not used to contradict claim meaning that is unambiguous in light of the intrinsic evidence." *Id.* at 1324. "The sequence of steps used by the judge in consulting various sources is not important; what matters is for the court to attach the appropriate weight to be assigned to those sources in light of the statutes and policies that inform patent law." *Id.* (citing *Vitronics*, 90 F.3d at 1582).

### III. <u>CONSTRUCTION OF DISPUTED CLAIM TERMS</u>

The parties agree on the proper construction of several terms in the '515 Patent. Consequently, as to these claim terms, there is no controversy and the Court adopts the parties' agreed construction as set forth in the Joint Claim Construction Chart [Doc. # 81].

The Court has carefully reviewed the '515 Patent and all other evidence of record, has considered counsel's arguments presented at the *Markman* hearing, and has applied governing Federal Circuit authority. On this basis, the Court construes the following terms in Claims 1 and 2 of the '515 Patent.

A. **"Said Vertical Supports Spring-Biased So As To Maintain Said Vertical Supports and Said Platforms in a Parallelogram Configuration"**

The two vertical supports, the floor platform, and the shoe platform form a parallelogram. There is a spring between the two vertical supports that causes the vertical supports to return more readily to a "neutral" or vertical position, in which the parallelogram is a rectangle. The Court construes the claim term "said vertical supports spring-biased so as to maintain said vertical supports and said platforms in a parallelogram configuration" to mean "a spring biased against the vertical supports that causes the vertical supports and the platforms to be maintained in a parallelogram configuration."

B. **"Said Mounting Including a Capturing Bracket for Engaging the Lower End of Said Leg Support"**

One of the improvements contained in the '515 Patent is the addition of the "capturing bracket" on the rear vertical support, which bracket receives and holds the leg support. In the embodiment figures contained in the '515 Patent and on the stilts shown to the Court, the capturing bracket is a small structure that is enclosed on three sides and the bottom. The fourth, open side of the capturing bracket is attached on the rear vertical support. The leg support is placed into the capturing bracket and, in all the embodiments, a bolt or other fastener is placed through the sides of the capturing

bracket and through the lower end of the leg support. The Court construes the term "said mounting including a capturing bracket for engaging the lower end of said leg support" to mean "the mounting includes a bracket into which the lower end of the leg support may be positionally fixed to prevent movement downward below the bracket or laterally in any direction."

### C.   "A Resiliently Lined Yoke"

Claim 1 contains the claim term "a resiliently lined yoke." The yoke is a clamp that connects the leg support to the shoe platform. The Court construes the term "resiliently lined yoke" to mean "a yoke or clamp lined with a material that is capable of being elastically or reversibly deformed." The term requires a lining that is distinct from the yoke itself, but does not require that the lining and the yoke be of different materials.

### D.   "Said Lower End and Said Capturing Bracket Engaged By a Fastener So As To Remain Engaged Despite Failure of Said Fastener"

As noted above, one of the improvements accomplished by the '515 Patent was to use two methods to secure the leg support rather than a single fastener. The leg support sits in the capturing bracket and also is held in place by a "fastener" going through the leg support and the capturing bracket. If the fastener breaks or otherwise fails, the capturing bracket continues to hold the leg support in place. The Court

construes the term "said lower end and said capturing bracket engaged by a fastener so as to remain engaged despite failure of said fastener" in Claim 1 to mean that "the lower end of the leg support and the capturing bracket are engaged by the fastener so that if the fastener fails to perform its function, the lower end of the leg support and the capturing bracket remain in place and the capturing bracket continues to hold the leg support."

## IV.   CONCLUSION

The Court accepts the parties' agreement regarding the construction of the agreed terms in the '515 Patent. The Court has considered the intrinsic evidence and, to the extent necessary, the extrinsic evidence in the record. Based on the evidence and the application of governing legal principles, the Court construes the disputed terms in Claims 1 and 2 as set forth herein.

The remaining deadlines in the Court's Docket Control Order [Doc. # 37] remain in effect, including the mediation requirement.

SIGNED at Houston, Texas, this **15th** day of **February, 2007**.

_Nancy F. Atlas_
Nancy F. Atlas
United States District Judge