## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| THE FOREST GROUP, INC., | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-05-4127 |
| | § | |
| BON TOOL COMPANY, | § | |
|     Defendant. | § | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

Plaintiff The Forest Group, Inc. ("Forest") filed this patent infringement lawsuit against Defendant Bon Tool Company ("Bon Tool"). Bon Tool filed a counterclaim asserting false marking pursuant to 35 U.S.C. § 292, a Lanham Act claim pursuant to 15 U.S.C. § 1125, and a claim seeking a declaration that Forest's patent is invalid. Both parties seek to recover their attorneys fees. The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1338(a), and there is no objection to this Court's personal jurisdiction over either party or to venue in this federal district.

The Court granted summary judgment in favor of Bon Tool on the infringement issue, and Bon Tool's counterclaims were tried to the Court beginning July 8, 2008. Each party presented evidence through trial exhibits and through live witnesses. Having heard and observed the witnesses who testified at trial, having considered the

exhibits introduced by the parties[1], and having reviewed all matters of record in this case, the Court makes the following findings of fact and conclusions of law.[2]

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Forest owns all rights in United States Patent No. 5,645,515 ("the '515 Patent"), originally issued to William D. Armstrong.  Joe Lin is Forest's principal.  The '515 Patent covers a stilt used primarily in the construction industry to enable persons working on suspended ceiling structures to walk around more freely while raised to an elevated height.

The stilt covered by the '515 Patent is described fully in the Court's Memorandum on Claim Construction [Doc. # 84] entered February 15, 2007.  Briefly, the stilt contains a floor platform, a shoe platform, and vertical supports that can be extended or shortened to move the shoe platform to different elevated heights.  The platforms are pivotally connected to the vertical supports, and supports containing a spring are located between and connected to the two vertical supports.  The

---

[1]    The Court has considered only evidence introduced through exhibits and testimony at trial.  Consequently, Forest's Motion to Exclude Exhibit C Attached to Bon Tool's Post Trial Brief [Doc. # 176] is **DENIED AS MOOT**.

[2]    The Court explains the evidence and uses various forms of the word "find" to indicate a finding of fact, and sets forth legal principles and uses forms of the words "hold" and "conclude" to indicate a conclusion of law.  To the extent a finding of fact is more properly a conclusion of law, and to the extent a conclusion of law is more properly a finding of fact, it should be so construed.

combination of the two vertical supports, the floor platform, and the shoe platform create a parallelogram configuration. The lower end of the leg support, attached to the side of the rear vertical support, fits into a "capturing bracket" riveted to the rear vertical support. The leg support is attached to the shoe platform by a clamp, referred to in the '515 Patent as a "yoke." The '515 Patent requires that this yoke be "resiliently lined."

In 2005, Warner Manufacturing Company ("Warner") filed a patent case against Forest and its principals – *Warner Manufacturing Co. v. William Armstrong, Joe Lin, and The Forest Group, Inc.*, Civil Action No. 05-CV-612 (the "*Warner*" Suit) – in the United States District Court for the District of Minnesota seeking a declaration of non-infringement.

In October 2005, Forest obtained an opinion from its Washington, D.C. patent counsel, Blank Rome LLP, regarding the '515 Patent and the Warner stilt. *See* Blank Rome Letter, Bon Tool Exhibit ("BTExh.") 20. In that opinion letter, counsel advised Forest that the Warner stilt did not literally infringe the claims of the '515 Patent because it did not include a resiliently lined yoke. Counsel also opined, however, that the Warner stilt could infringe under the doctrine of equivalents because the Warner stilt, although not resiliently lined, contains a yoke that is resiliently fastened such that it performs the same function as a resiliently-lined yoke. *See id.*

In December 2005, Forest sued Bon Tool in this Court alleging infringement of the '515 Patent. This Court conducted a hearing pursuant to *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 390 (1996) ("*Markman* hearing") on February 9, 2007. Thereafter, on February 15, 2007, the Court issued its Memorandum on Claim Construction, construing the disputed terms in the '515 Patent. The Court construed the term "said vertical supports spring-biased so as to maintain said vertical supports and said platforms in a parallelogram configuration" to mean "a spring biased against the vertical supports that causes the vertical supports and the platforms to be maintained in a parallelogram configuration." The Court construed the claim term "resiliently lined yoke" to mean "a yoke or clamp lined with a material that is capable of being elastically or reversibly deformed." *See* Memorandum on Claim Construction, pp. 7-8. The Court noted specifically that the term "resiliently lined yoke" requires a lining that is distinct from the yoke itself, but does not require that the lining and the yoke be of different materials. *See id.* at 8.

Neither the Bon Tool stilt nor the Forest stilt included a resiliently lined yoke, and neither stilt needed the spring to maintain the vertical supports and the platforms in a "parallelogram configuration." Accordingly, Bon Tool moved for summary judgment on the issue of non-infringement, and the Court granted the motion in a Memorandum and Order [Doc. # 91] entered August 3, 2007.

In the *Warner* Suit, the district court issued its claim construction decision on March 30, 2007.  The Minnesota district court construed the disputed claims in a manner almost identical to the claim construction issued by this Court.  *See Markman* Order in the *Warner* Suit (BTExh. 26).  On November 15, 2007, the Minnesota court issued summary judgment of non-infringement in favor of Warner and against Forest.

Joe Lin, Forest's owner, testified that in November 2007, apparently after the *Warner* Suit ruling on non-infringement, his new counsel advised him to modify the stilt to include a resilient lining.  Lin also testified that he immediately ordered from his manufacturer in China stilts with a separate lining (actually, a latex 1" wide ring for placement inside the yoke).  He explained that, beginning in February 2008, the "SS" series of stilts sold by Forest contain a "resilient lining."  Lin further testified that he instructed his manufacturer to stop marking the other series of stilt models that Forest sells, the "S2" series, with the '515 Patent number.  Lin testified that he noticed the week before trial that, in fact, the manufacturer had failed to remove the patent marking from the S2 series stilts' foot plate, which continued to be marked with the patent number.  He acknowledged he had not checked the new stilts' foot plates until very recently.

The parties in this case completed discovery on Bon Tool's counterclaims for false marking  under 35 U.S.C. § 292, violation of § 1125(a) of the Lanham Act, and

invalidity for lack of enablement.  Bon Tool also filed a request for attorneys fees under 35 U.S.C. § 285.  The counterclaims were tried to the Court and are ripe for decision.

## II.    FALSE MARKING CLAIM

### A.    Liability Determination

#### 1.    Legal Standards

It is a violation of federal patent law to mark an unpatented article with the word "patent" or any patent number for the purpose of deceiving the public.  *See* 35 U.S.C. § 292(a).  One purpose of the "false marking" statute is to "penalize those who would palm off upon the public unpatented articles, by falsely and fraudulently representing them to have been patented."  *See Calderwood v. Mansfield*, 71 F. Supp. 480, 482 (N.D. Cal. 1947) (discussing § 50, former version of § 292).   The two elements of a § 292 false marking claim are (1) marking an unpatented article and (2) intent to deceive the public.  *See Clontech Labs., Inc. v. Invitrogen Corp.*, 406 F.3d 1347, 1352 (Fed. Cir. 2005).

"Intent to deceive is a state of mind arising when a party acts with sufficient knowledge that what it is saying is not so and consequently that the recipient of its saying will be misled into thinking that the statement is true."  *Id.* (citing *Seven Cases v. United States*, 239 U.S. 510, 517-18 (1916)).  "Intent to deceive, while subjective

in nature, is established in law by objective criteria." *Id.* The false marking together with proof that the accused "had knowledge of its falsity" is adequate to create an inference of intent to deceive. *Id.* A simple denial of intent to deceive is insufficient to escape liability under § 292, but the "plaintiff must show by a preponderance of the evidence that the party accused of false marking did not have a reasonable belief that the articles were properly marked (i.e., covered by a patent)." *Id.* at 1352-53. Whether the accused's conduct rises to the level of intent to deceive is a question of fact based on the specific circumstances of the particular case under consideration. *See id.* at 1353. Because it is penal in nature, § 292 must be "strictly construed." *See Proportion-Air, Inc. v. Buzmatics, Inc.*, 57 F.3d 1085, *3 (Fed. Cir. June 14, 1995); *Brose v. Sears, Roebuck & Co.*, 455 F.2d 763, 765 (5th Cir. 1972); *Chamilla, LLC v. Pandora Jewelry, LLC*, 2007 WL 2781246, *10 (S.D.N.Y. Sept. 24, 2007).

The false marking statute, § 292, restricts a patent holder's right to mark the patent number on its products in circumstances where the product does not conform to the patent claims. This restriction in § 292, while important, contrasts and sometimes conflicts with a patent holder's obligation to mark its product consistently and continuously in order to provide constructive notice of the patent. Indeed, a patentee may only recover damages for infringing sales that occurred after it gave actual or constructive notice of its patent rights. *See* 35 U.S.C. § 287(a); *Sentry*

*Protection Prod., Inc. v. Eagle Mfg. Co.*, 400 F.3d 910, 918 (Fed. Cir. 2005). "Constructive notice is provided when the patentee consistently marks substantially all of its patented products." *Sentry*, 400 F.3d at 918 (internal quotations and citations omitted). A patentee may give constructive notice that a product is patented by marking the product or affixing to it the word "patent" or the abbreviation "pat." with the patent number. *See* 35 U.S.C. § 287(a). This marking must be "substantially consistent and continuous" for it to qualify as constructive notice. *See Nike, Inc. v. Wal-Mart Stores, Inc.*, 138 F.3d 1437, 1446 (Fed. Cir. 1998). Consequently, if a patent holder stops marking its product, even if only temporarily during pendency of a lawsuit after an interlocutory adverse *Markman* or other ruling, in order to avoid potential liability under § 292, the patent holder will have lost the ability to recover damages from infringers — even if the holder ultimately succeeds in establishing the asserted patent covers the patent holder's product — because its products have not been marked "substantially consistently and continuously." *See, e.g., Gridiron Steel Co. v. Jones & Laughlin Steel Corp.*, 361 F.2d 791, 797 (6th Cir. 1966). Therefore, as a practical matter, during pendency of infringement litigation, the tension between § 292 and § 287(a) may place a patent holder in a precarious position.

In sum, although false marking of products together with proof that the accused "had knowledge of its falsity" proven by a preponderance of the evidence is adequate

to create an inference of intent to deceive for purposes of § 292, the statute is penal in nature and requires strict construction, especially when the false marking is alleged to have occurred during the pendency of infringement litigation.  District court *Markman* and summary judgment non-infringement rulings in patent cases are interlocutory.  As a result, a single district court's adverse claim construction ruling (and any associated summary judgment ruling) that results in the inference that a patent holder's product is not covered by the patent in issue should not suffice to establish a § 292 false marking claim.

The focus of this case is whether Bon Tool has proven by a preponderance of the evidence that Forest acted with the intent to deceive, which in turn requires evidence that Forest had knowledge that it was falsely marking articles with the '515 patent number.  Given the competing policy considerations and the unusual circumstances of the § 292 claim in this case, the Court finds Forest liable under § 292 when the company, through its principal, Lin, could no longer reasonably believe that the articles they were marking were covered by the '515 patent.

### 2.    Analysis

The Court has considered all admissible evidence of record from the trial, and assessed the credibility of the witnesses.  It is undisputed that Forest's stilts were marked with the '515 patent but were not covered by that patent.

The Court finds that Forest (through Lin and Armstrong) genuinely believed that Forest's stilts were covered by the '515 patent, applied for in 1995 and issued in 1997.  Their belief was based on the fact that the patent application was written by experienced Washington, D.C. patent counsel who had an exemplar of the stilt on which the applicants sought the patent.[3]

The Court finds, however, that after November 15, 2007, Forest engaged in false marking in violation of § 292.  By that date, (i) Forest had been sued by Warner for non-infringement; (ii) Forest had received (and Lin and Armstrong had read) the Blank Rome opinion of October 2005, advising that a stilt without a resiliently lined yoke did not literally infringe the '515 Patent but concluding that the Warner stilt infringed under the doctrine of equivalents due to that stilt having a resiliently-fastened yoke, rather than a resiliently-lined yoke; (iii) Forest, through Lin and Armstrong, had received and read *two* separate district courts' consistent claim construction rulings that the '515 patent required a "resiliently lined yoke," among other claim elements; (iv) Forest had received and was aware of two summary

---

[3]    Forest failed to provide any corroboration for its witnesses' testimony that the patent lawyer was given a prototype stilt, which allegedly was identical to the ones Forest has sold since the patent was obtained and thus which did not contain a resiliently lined yoke.  Armstrong and Lin did not check with their former counsel or otherwise attempt to find the item.  The Court nevertheless credits Lin and Armstrong's testimony that they believed that their stilts were covered by the patent when it was issued.  Given that more than ten years have passed since the application, it is highly unlikely that the prototype is available, if even still in existence.

judgment rulings finding non-infringement of the '515 Patent[4]; and (v) Forest had retained experienced patent litigation counsel who had advised it that its stilts did not satisfy the claims of the '515 Patent and must be modified.[5]  Forest at that point no longer maintained a reasonable belief that its stilts were properly marked as covered by the '515 Patent.

It was only by November 15, 2007 that Forest (through Lin, the principal of the company, a Taiwanese businessman who is not a native English speaker and who has no legal training) realized the serious implications of the October 2005 Blank Rome legal opinion, namely, that Forest's own product was not covered by the patent because it lacked a resiliently lined yoke, the same reason that Bon Tool's product was

---

[4]    The Court is aware that as of November 15, 2007, none of the district court rulings were final and none had been affirmed by the United States Court of Appeals for the Federal Circuit.  While the finality of a district court's ruling and the lack of an appeal could be important considerations counseling against a finding of intent to deceive in a false marking case, the Court finds that those factors are overcome in this case by the existence of four rulings from two separate federal district courts in this uncomplicated case about a very straightforward patent.  Also significant is that, at trial, as during the summary judgment proceedings, neither Lin nor Armstrong could explain how the Forest stilts' yoke's lining was "resilient" in any way.  The testimony, instead, suggested that the interior surface of the yoke was harder than the rest of that component of the stilt.

[5]    Despite the fact that Forest's principals, Lin and Armstrong, had obtained various patents, they and their original litigation counsel were obviously inexperienced in patent litigation and doctrine.  Neither Lin nor Armstrong have strong academic backgrounds in fields that require verbal acuity, deductive reasoning, or an in-depth appreciation of patent law.

not covered.[6]  Upon the *Warner* court's ruling rejecting infringement based on the doctrine of equivalents, Forest understood that its reliance on Blank Rome's theory in that regard was unfounded.[7]  Because of the lack of finality of *Markman* rulings generally and the fact that those rulings as well as district court summary judgment decisions are interlocutory, however, the Court is unpersuaded that Forest knew that its own stilts were not covered by the '515 patent until Forest received both the first and second summary judgment rulings and an opinion by experienced and independent patent litigation counsel.

To show absence of intent to deceive, Forest relied at trial on Lin's testimony that after he received the November 15, 2007, summary judgment ruling in the *Warner* Suit, he immediately ordered new SS series stilts with yokes that had a resilient lining and instructed his manufacturer to stop marking the S2 series stilts with the '515 Patent number.  The Court finds that Lin placed an order for new S2 series stilts at least once after November 15, 2007.  Lin also apparently sought to modify the

---

[6]    The Blank Rome opinion did not address the Bon Tool product or Forest's own product.

[7]    The Blank Rome opinion focused on the fact that the Warner stilt had a cut rubber washer that the firm construed to be the equivalent of the "resiliently lined yoke"; Blank Rome deemed the cut rubber washer to be a "fastener" that could serve the same purpose as the resilient lining of the yoke.

SS series stilts to include a latex (and thus resilient) "lining" to be inserted into the yoke.[8]

The Court does not, however, credit Lin's testimony concerning directions for the manufacturer to stop marking the S2 stilts with the patent number. There are no documents reflecting the communications between Lin and his manufacturers. There are no emails, no phone records, no letters — nothing to support Lin's testimony that he made any effort, much less any meaningful effort, to stop marking the S2 series stilts. The Court finds it incredible that an international businessman such as Lin would not have any documentation reflecting such important instructions to his manufacturer. The Court finds it equally incredible that Lin did not immediately and carefully check all parts of the new batch of stilts to verify that the newly-manufactured stilts complied with his alleged instructions to the manufacturer not to mark them with the patent number. Indeed, Forest's alleged failure to notice the improper markings is strong circumstantial evidence of knowledge of intent to deceive the public as to the S2 series stilts. The Court finds that Forest is liable under § 292 beginning on November 15, 2007. Bon Tool is entitled to judgment against Forest on the § 292 false marking claim.

---

[8]    While the evidence is sparse as to whether all the new SS stilts in fact are modified, the only evidence in the record in this regard (other than Lin's testimony) is that Bon Tool purchased one of the SS series stilts and it contained the modification.

### B.    Damages Calculation

If the patent holder has falsely marked its products, it is liable for a penalty of "not more than $500 for every such offense."  35 U.S.C. § 292.  One-half of the penalty goes to the person asserting the § 292 claim and the other half goes to the use of the United States.  *See* 35 U.S.C. § 292(b).  The key issue is what constitutes an "offense" for purposes of the § 292 penalty.  Case law on the issue is limited and the approaches taken by the various courts vary greatly.  Bon Tool argues, with no supporting legal authority, that the Court should impose a penalty of $500 for each stilt sold with the false marking.  This approach was addressed and rejected in *London v. Everett H. Dunbar Corp.*, 179 F. 506 (1st Cir. 1910).  In that case, the First Circuit noted that the "statute does not prescribe a distinct penalty for each individual article marked, but merely a penalty for the offense of marking . . .."  *Id.* at 507.  As explained by the First Circuit, to impose a penalty for each unit could lead to the illogical result "that the false marking of small or cheap articles in great quantities will result in the accumulation of an enormous sum of penalties, entirely out of proportion to the value of the articles, while the marking of expensive machines used in limited numbers may result in the infliction of penalties which are comparatively slight in relation to the pecuniary value of the articles."  *Id.* at 508.  The First Circuit stated that "[i]t can hardly have been the intent of Congress that penalties should accumulate as

fast as a printing press or stamping machine might operate." *Id.* Based on the *London* decision and its rationale, the Court rejects Bon Tool's argument that the penalty should be imposed for each stilt with the false marking.

The approach preferred by the First Circuit in *London* is that when the marking is part of a single, continuous act, there is "but one offense . . . and only a single penalty is recoverable, though more than one article may have been marked." *Id.*; *see also Sadler-Cisar, Inc. v. Commercial Sales Network, Inc.*, 786 F. Supp. 1287, 1296 (N.D. Ohio 1991) ("continuous markings over a given time constitute a single offense"). This is true because "the statute must be read as making the fraudulent purpose or intent to deceive the public the gravamen of the offense, and the marking as the overt act whereby the intent is made manifest." *London*, 170 F. at 508. A plaintiff, in order to recover for more than a single offense, must present specific proof as to time and circumstances of the false marking to "show a number of distinct offenses, and to negative the possibility that the marking of the different articles was in the course of a single and continuous act."[9] *Id.* There is "no presumption that each act of marking was so separated from the others as to constitute a distinct offense." *Id.* at 508-09.

---

[9]    One method for satisfying this burden of proof would be to present evidence regarding separate orders placed by the patent holder for falsely-marked articles. In this case, however, Bon Tool presented no evidence on this issue.

Several courts more recently have favored a time approach for determining an "offense" for purposes of calculating the § 292 penalty. *See, e.g., Brose v. Sears, Roebuck & Co.*, 455 F.2d 763, 766 n.4 (5th Cir. 1972) (stating in *dicta* in a footnote that a court could reject a damages calculation based on the number of units, "limiting" the number of offenses to an increment of time); *Icon Health & Fitness, Inc. v. The Nautilus Group, Inc.*, 2006 WL 753002, *7 (D. Utah Mar. 23, 2006) (imposing a penalty for each week that the false marking occurred). The Court finds this time-based method for calculating damages unsupported by the language of the statute or by persuasive or binding legal authority.

In this case, the evidence indicates that Forest made only one separate, distinct decision to mark its stilts after it knew the stilts did not meet all the claims of the '515 Patent. Lin testified that, after November 15, 2007, he placed an order for S2 series stilts.[10] It is undisputed that the stilts ordered after November 15, 2007, included the '515 Patent number on the foot plates and that order constitutes a "marking" under § 292 for which a $500.00 penalty will be imposed. The Court cannot find, however, on this record, that Forest has marked the '515 Patent number on the SS series stilts

---

[10]    Lin also testified that he, at the time he ordered the stilts, instructed the manufacturer to stop making the S2 series stilts with the patent number. The Court finds Lin's testimony on the marking issue to be unpersuasive.

after November 15, 2007, with knowledge that the modified stilts do not meet the claims of the patent.

As a result, it appears that Forest made a single decision to mark its non-conforming stilts after it had adequate information from which to know that the stilts did not meet the claims of the '515 Patent. That single decision constitutes a single offense for purposes of calculating damages under § 292. The Court assesses a penalty in the amount of $500.00 against Forest pursuant to § 292(b).

## III.   LANHAM ACT CLAIM

Bon Tool alleges that Forest's advertising its stilts as covered by the '515 Patent constitutes false advertising in violation of § 1125(a) of the Lanham Act. To prevail on a Lanham Act claim in the patent context, the plaintiff must prove by clear and convincing evidence:

> (1) that the defendant . . . made a false or misleading statement of fact in commercial advertising or promotion about the plaintiff's goods or services; (2) that the statement actually deceives or is likely to deceive a substantial segment of the intended audience; (3) that the deception is material in that it is likely to influence purchasing decisions; (4) that the defendant caused the statement to enter interstate commerce; and (5) that the statement results in actual or probable injury to the plaintiff.

*Zenith Electronics Corp. v. Exzec, Inc.*, 182 F.3d 1340, 1348 (Fed. Cir. 1999); *see also North Amer. Med. Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211, 1224 (11th Cir. 2008).

It is undisputed that Forest advertised that its stilts were covered by the '515 Patent and that it caused that advertising to enter interstate commerce. The Court finds that Forest made a false statement of fact when it represented that its stilts were covered by the '515 Patent. Because the statements were false, rather than merely misleading or ambiguous, the Court assumes consumer deception without evidence on the issue. *See IQ Prods. Co. v. Pennzoil Prods. Co.*, 305 F.3d 368, 375 (5th Cir. 2002). As a result, Bon Tool has established the first, second, and fourth elements of its Lanham Act claim.

As to the third element, in cases such as the case at bar in which the advertising was literally false, the party asserting the Lanham Act claim must prove materiality by establishing "that the defendant's deception is likely to influence the purchasing decision." *North Amer. Med.* Corp., 522 F.3d at 1126 (internal quotations and citations omitted). "The materiality requirement is based on the premise that not all deceptions affect consumer decisions." *Id.* (quoting *Johnson & Johnson Vision Care, Inc. v 1-800 Contacts, Inc.*, 299 F.3d 1242, 1250 (11th Cir. 2002)). Bon Tool failed to present evidence that Forest's statements that its stilts were covered by the '515 Patent were material, *i.e.*, likely to influence purchasing decisions by consumers.

Turning to the fifth element, where the challenged advertising is literally false, there may be a presumption that the false statements caused injury to the plaintiff *if*

the false statements involved comparative advertisements. *See Healthpoint, Ltd. v. Stratus Pharmaceuticals, Inc.*, 273 F. Supp. 2d 871, 885 (W.D. Tex. 2001), and cases discussed therein. "[W]hen the defendant has falsely advertised its product but made no comparison with a competitor's product, the courts have refused to apply the presumption of causation and harm, even when the products were in obvious competition." *Id.* The false advertising regarding the patented status of Forest's stilts did not contain any comparison between Forest's stilt and Bon Tool's stilt. As a result, Bon Tool was required to show that it suffered an injury as a result of Forest's incorrect statements. They failed to present any evidence on this issue and conceded in argument following trial that they had no evidence that Bon Tool suffered any actual injury caused by Forest's false advertising.

Bon Tool has failed to establish the third and fifth elements of its Lanham Act claim, and Forest is entitled to judgment on the § 1125(a) claim.

## IV.   INVALIDITY CLAIM (ENABLEMENT)

A patent must enable a person of ordinary skill in the art to make and use the device. *See* 35 U.S.C. § 112; *CFMT, Inc. v. Yieldup Intern. Corp.* 349 F.3d 1333, 1338 (Fed. Cir. 2003); *MEMC Electronic Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 248 F. App'x. 199, 203-04 (Fed. Cir. Sept. 20, 2007). "The enablement requirement is met if the description enables any mode of making and using the

claimed invention." *Engel Indus., Inc. v. Lockformer Co.*, 946 F.2d 1528, 1533 (Fed. Cir. 1991) (quoted in *CFMT*, 349 F.3d at 1338). The enablement requirement is satisfied if one skilled in the art, after reading the patent, could make the claimed invention without significant experimentation. *See AK Steel Corp. v. Sollac*, 344 F.3d 1234, 1244 (Fed. Cir. 2003). "Enablement does not require an inventor to meet lofty standards for success in the commercial marketplace [and] does not require that a patent disclosure enable one of ordinary skill in the art to make and use a perfected, commercially viable embodiment absent a claim limitation to that effect." *CFMT*, 349 F.3d at 1338. Because issued patents have a strong presumption of validity, the party challenging the patent's validity bears the burden of proving lack of enablement by clear and convincing evidence. *See MEMC*, 248 F. App'x. at 204 (citing *Johns Hopkins Univ. v. CellPro, Inc.*, 152 F.3d 1342, 1359 (Fed. Cir. 1998)).

Bon Tool failed to prove, by clear and convincing evidence or otherwise, that the '515 Patent is invalid for lack of enablement. Indeed, Bon Tool's expert witness[11] conceded on cross-examination that he could not testify that a person of ordinary skill in the art (stilts and similar structures) could not make the stilts using the '515 Patent.

---

[11]     Bon Tool's expert, Thomas David Felmley, has a masters degree in materials engineering, an area of expertise that is marginally relevant at best.

Bon Tool has not satisfied its burden to prove invalidity by clear and convincing evidence and Forest is entitled to judgment on this claim.

## V.    CLAIM FOR FEES

Both parties assert a claim for attorneys fees. "The court in exceptional cases may award reasonable attorney fees to the prevailing party" in a patent case. 35 U.S.C. § 285. Also, the party that prevails on a Lanham Act claim may recover its reasonable attorneys fees in exceptional cases. *See* 15 U.S.C. § 1117(a); *Schlotzksy's Ltd. v. Sterling Purchasing and National Distribution Co., Inc.*, 520 F.3d 393, 401 (5th Cir. 2008).

"Exceptional cases usually feature some material, inappropriate conduct related to the matter in litigation, such as willful infringement, . . . misconduct during litigation, vexatious or unjustified litigation, conduct that violates Federal Rule of Civil Procedure 11, or like infractions." *Serio-US Indus., Inc. v. Plastic Recovery Tech. Corp.*, 459 F.3d 1311, 1321-22 (Fed. Cir. 2006). Section 285 is "limited to circumstances in which it is necessary to prevent a gross injustice." *FieldTurf Int'l, Inc. v. Sprinturf, Inc.*, 433 F.3d 1366, 1373 (Fed. Cir. 2006) (quoting *Forest Labs, Inc. v. Abbott Labs.*, 339 F.3d 1324, 1329 (Fed. Cir. 2003)). The prevailing party must prove an exceptional case by clear and convincing evidence. *See Perricone v. Medicis*

*Pharm. Corp.*, 432 F.3d 1368, 1380 (Fed. Cir. 2005) (§ 285); *Schlotzsky's*, 520 F.3d at 402 (§ 1117(a)).

As was discussed above in connection with the false marking claim, it was not until November 2007, when this Court and a federal district court in Minnesota ruled that there was no infringement, did it become sufficiently clear that the Bon Tool stilts did not infringe the '515 Patent and that Forest had misapplied that patent to its own products. By that point, however, Forest was no longer pursuing any affirmative claims in this case but was, instead, merely defending against Bon Tool's counterclaims. As a result, the Court does not find that this patent case, either the infringement claim or the false marking claim, is exceptional.

Bon Tool has been unsuccessful on all its counterclaims except the false marking claim and has been awarded minimal damages, significantly less than it was seeking, on that claim. Specifically, Bon Tool was unsuccessful on its counterclaim for a declaration of patent invalidity and on its Lanham Act claim. Nonetheless, the Court finds that Bon Tool maintained a good faith belief that its counterclaims were justified by the facts and the law. Consequently, the Court finds that the counterclaims did not present an exceptional case that would support an award of fees under either § 285 or § 1117(a).

The Court finds that neither party has shown by clear and convincing evidence that this is an exceptional case or that an award of attorneys fees in this case is necessary to prevent a gross injustice.  The Court, therefore, denies both parties' requests for fees.

## VI.    <u>CONCLUSION</u>

Based on the foregoing, final judgment will be entered in favor of Forest on the Lanham Act claim and on the invalidity claim.  Final judgment will be entered in favor of Bon Tool on the false marking claim in the amount of $500.00, one half to Bon Tool and one half to the United States.  Neither party is awarded attorneys fees. The Court will issue a separate Final Judgment.

SIGNED at Houston, Texas, this **29<u>th</u>** day of **July, 2008**.

_____
Nancy F. Atlas
United States District Judge